**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JUDITH L. HOCKNELL,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

1:16-cv-09093-NLH-AMD

**OPINION**

---

**APPEARANCES**:

DONALD L. MASTEN
MICHAEL J. NAPUDA
MASTEN AND RAY
254 SOUTH BROADWAY
PO BOX 406
PENNSVILLE, NJ 08070
    On behalf of Plaintiff

RANDI F. KNEPPER
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLC
1300 MT. KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NJ 07962
    On behalf of Defendant

**HILLMAN, District Judge**

    This is an ERISA matter concerning the denial of life insurance benefits to the decedent's niece who held her uncle's power of attorney. Currently pending are the parties' cross-motions for summary judgment. For the reasons expressed below, Defendant's motion will be granted, and Plaintiff's motion will be denied.

**BACKGROUND**

Plaintiff, Judith L. Hocknell, is the niece of Douglas W. Saul, who held a group term life insurance policy through Defendant, Metropolitan Life Insurance Company ("MetLife"), as part of his employment with Mannington Mills, Inc. ("Mannington"). On June 3, 2015, Plaintiff forwarded an insurance beneficiary designation form to Mannington's human resources department naming herself as the sole beneficiary of the MetLife policy because her uncle was under hospice care and his life expectancy was short. Plaintiff believed, apparently mistakenly, that the beneficiary designation needed to be revised to remove as a beneficiary Plaintiff's sister, who had died a year before.[1] (Docket No. 7-5 at 28-29.)

On October 27, 2015, Saul passed away. There were several miscommunications between Plaintiff, Mannington's human resources department, and MetLife, as well as missing documentation, including a page from Saul's durable power of attorney. Eventually Plaintiff received a letter from MetLife denying her claim for benefits on April 7, 2016.

MetLife denied Plaintiff's claim because it determined that

---

[1] Even though Plaintiff thought that a previous designation of beneficiaries for Saul's life insurance policy named Plaintiff and her sister, Lynette A. Ladlee, it appears that the designation of beneficiaries on file with Mannington related to Saul's pension benefits, not the MetLife life insurance policy.

2

the durable power of attorney did not permit Plaintiff to change the designation of beneficiary to herself.² (Id.)  MetLife also determined that because Saul had no designated beneficiaries, it was required to apply the Plan's Line of Succession provision, which awarded benefits to Saul's spouse or civil union partner, child, parent, or siblings, and if no such persons survived him, the estate.  (Id.)  MetLife denied benefits to Plaintiff under the Line of Succession provision because she was Saul's niece and did not qualify as a lineal heir.  (Id. at 84.)

    Plaintiff appealed that decision, arguing that the durable power of attorney did allow her to designate herself as a beneficiary.³ (Docket No. 7-5 at 85-87).  She cited to several provisions in the document, including Paragraph 1, General Grant of Power, Paragraph 2, Powers of Collection and Payment,

---

² The initial denial letter states:

> According to our records, the latest beneficiary designation on file was completed by you as the decedent's Power of Attorney.  This designation is not acceptable as the Power of Attorney papers don't provide you the powers to change such designation nor name yourself as the beneficiary.  In order to have those powers as the Attorney in Fact the Power of Attorney papers would have to explicitly provide you such powers, which they do not.

(Docket no. 7-5 at 81.)

³ Plaintiff does not appear to contest that she does not qualify for benefits under the Plan's Line of Succession provision.  It is unclear from the record which of Saul's heirs would be deemed the beneficiary of the policy under the Line of Succession provision.

3

Paragraph 3, Life Insurance, and Paragraph 25, Good Faith Reliance. (Id.; see also Docket No. 7-5 at 56-65.)

MetLife denied her appeal, stating that the power of attorney "may not be read to include the power to designate a beneficiary of life insurance unless that power is specifically listed on the executed form," and "the Power of Attorney does not specifically state that the Attorney-in-Fact has power to designate or change a life insurance beneficiary." (Docket No. 7-5 at 95.)

Plaintiff filed the instant suit against MetLife,[4] claiming that MetLife illegally denied her claim for the life insurance benefits[5] because the durable power of attorney clearly grants Plaintiff the power to designate herself as a beneficiary, citing to Paragraph 1, the General Power "to exercise or perform any act, power, duty, right, or obligation whatsoever," and Paragraph 2, Power of Collection and payment, "to forgive, request, demand, sue for, recover, collect checks, drafts, accounts, deposits, legacies, bequests, annuities and pensions." (Docket No. 7-5 at 111.)

Both parties have moved for summary judgment in their favor. MetLife argues that under the arbitrary and capricious

---

[4] Plaintiff originally filed her complaint in New Jersey state court. MetLife removed the case to this Court.

[5] The amount of benefits under the policy is $3,500.00.

4

standard of review that must be applied to its benefit determinations under the Plan, its denial of Plaintiff's claim was based on a reasonable interpretation of the Plan and the governing documents.  MetLife argues that a New Jersey statute, N.J.S.A. 46:2B-8.13a, controls and precludes an attorney-in-fact from gratuitously transferring property of the principal to herself without express and specific authority.  Because MetLife determined that the durable power of attorney did not provide Plaintiff with that authority, MetLife argues that its denial of Plaintiff's claim to benefits cannot be deemed arbitrary and capricious.

In response, Plaintiff argues that Paragraph 20 in the durable power of attorney, a "Gifts" provision which allows the attorney-in-fact to make gifts to certain enumerated classes of people, satisfies N.J.S.A. 46:2B-8.13a, and therefore MetLife's denial of her claim was an abuse of discretion.

## DISCUSSION

### A.  Subject matter jurisdiction

Defendant removed Plaintiff's complaint from state court on the basis that the Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and specifically under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., as amended.

**B. Standard for Cross-Motions for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**C. Standard of Review under ERISA**

There is no dispute that the Plan meets the test to qualify as an ERISA plan. ERISA provides that a plan participant or beneficiary may bring a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The statute, however, does not specify a standard of review for an action brought pursuant to § 1132(a)(1)(B). Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989).

The Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. When the plan affords the administrator with discretionary authority, courts must review the benefit decision for an abuse of discretion. Conkright v. Frommert, 559 U.S. 506, 517 (2010) (affirming deferential standard of review to the plan administrator); see Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n.6 (3d Cir. 2010) (explaining that courts in this Circuit have referred to this standard of review as "abuse of discretion" or "arbitrary and capricious" - these standards of review are essentially identical and the terms are interchangeable).

The parties agree that the abuse of discretion/arbitrary and capricious standard applies to this case because the Plan gives the plan administrator discretionary authority to decide eligibility benefits or interpret terms of the Plan.

Under the abuse of discretion standard of review, "the Court's role is not to interpret ambiguous provisions *de novo*, but rather to 'analyze whether the plan administrator's interpretation of the document is reasonable.'" Connor v. Sedgwick Claims Management Services, Inc., 796 F. Supp. 2d 568,

7

580 (D.N.J. 2011) (quoting Bill Gray Enters. Inc. Employee and Health Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001)) (other citation omitted). A decision is considered arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

To determine whether a plan administrator abused its discretion, the Court must focus "on how the administrator treated the particular claimant." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir. 2007)). "Specifically, in considering the process that the administrator used in denying benefits, we have considered numerous irregularities to determine whether . . . the administrator has given the court reason to doubt its fiduciary neutrality." Id. (internal quotations omitted). This is accomplished "by taking account of several different, often case-specific, factors, reaching a result by weighing all together." Id. (quoting Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)).

The scope of a court's review is narrow, however, and the court "is not free to substitute its own judgment for that of the plan administrator in determining eligibility for plan benefits." Connor, 796 F. Supp. 2d at 579 (quotation omitted).

8

Thus, the plaintiff retains the burden to prove that he is entitled to benefits, and that the plan administrator's decision was arbitrary and capricious.

### D. Analysis

The primary dispute in this case is not the interpretation of Plan documents, but the interpretation of a New Jersey statute and its application to Saul's durable power of attorney. On January 28, 2004, N.J.S.A. 46:2B-8.13a codified a long-standing common law rule regarding a power of attorney's authority to provide gifts under a power of attorney document. See Wolpin v. Wolpin, 2010 WL 1028164, at *6 (N.J. Super. Ct. App. Div. 2010) (citing Manna v. Pirozzi, 130 A.2d 55 (N.J. Super. Ct. App. Div. 1957)) (explaining that N.J.S.A. 46:2B-8.13a codified New Jersey common law, which provided that "one holding a power of attorney could not appropriate to oneself or give away the assets of the principal unless the power of attorney 'contain[ed] very clear language' permitting such action"); see also Von Wedel v. McGrath, 180 F.2d 716 (3d Cir. 1950)(attorney-in-fact exceeded his powers by gratuitously transferring property because the power of attorney instrument contained only general language to conduct business transactions and did not authorize expressly authorize gifts), cert. denied, 340 U.S. 816 (1950).

This Court holds after a review of the language of the

relevant statute, N.J.S.A. 46:2B-8.13a, and the few cases that interpret it, that MetLife did not abuse its discretion in denying benefits in this case.

We begin with the language of the statute itself. N.J.S.A. 46:2B-8.13a provides:

> <u>A power of attorney shall not be construed to authorize the attorney-in-fact to gratuitously transfer property of the principal to the attorney-in-fact</u> or to others <u>except to the extent that the power of attorney expressly and specifically so authorizes</u>. An authorization in a power of attorney to generally perform all acts which the principal could perform if personally present and capable of acting, or words of like effect or meaning, is not an express or specific authorization to make gifts.

<u>Id</u>. (emphasis added.)

It is clear from a simple application of the statutory language in the section's second sentence that the "General Grant of Power" provision in Saul's durable power of attorney[6] is not sufficient to permit Plaintiff to designate herself a beneficiary of the life insurance policy. We view the first sentence of the section to be disjunctive as we have underlined it above[7] and to mean what it plainly says: to meet the

---

[6] A durable power of attorney differs from a standard power of attorney because it exercisable even if the principal becomes disabled or incapacitated. N.J.S.A. 46:2B-8.2(b). A durable power of attorney is an "inexpensive device that permits a person to cope with the ever-increasing risks of future incapacity," and "it can do so without court involvement and the potential expense and requirements of court supervision." § 52:1.Commentary, 16A N.J. Prac., Legal Forms § 52:1 (4th ed.).

[7] As one New Jersey court has noted "'[t]he word . . . 'or'

10

requirements of the statute a power of attorney must expressly state that an attorney-in-fact may make gifts to himself or herself.

The next question then is whether Saul's durable power of attorney otherwise "expressly and specifically" "authorizes" "the attorney-in-fact to gratuitously transfer property of the principal to the attorney-in-fact . . . ." The answer is no.

We recognize that Paragraph 20 in Saul's durable power of attorney "expressly and specifically" permits the attorney-in-fact to make gifts of property to the descendants of his siblings.

> 20. GIFTS. My Agent may make outright gifts of cash or property to adults or under applicable Gifts to Minors' Acts in custodial form to persons under the age of twenty-one (21) years. Permissible donees hereunder shall include my spouse, any child or step-child of mine and their descendants, parents, any sibling of mine or their descendants or any person to whom I shall have been married, as well as any person who shall be married to any of the foregoing.

(Docket No. 7-5 at 62.) Plaintiff argues that she, as Saul's

---

carries with it natural disjunctive import.' State v. Duva, 192 N.J.Super. 418, 421, 470 A.2d 53 (Law Div.1983). Furthermore, 'the legislature is deemed to have intended what it wrote and the Court may not construe a contrary concept.' Ibid." Pine Belt Chevrolet, Inc. v. Jersey Cent. Power & Light Co., 132 N.J. 564, 578-79, 626 A.2d 434, 441 (1993). Ambiguities that arise as to whether "and" might actually mean "or" are not implicated here. See e.g., Howard v. Harwood's Restaurant Co., 25 N.J. 72, 88, 135 A.2d 161 (1957)(determination of whether the word 'and' as used in a statute should be read in the conjunctive or disjunctive depends primarily upon legislative intent).

11

agent, is therefore authorized by the durable power of attorney to gratuitously give property – i.e., the benefits of the life insurance property[8] – to herself as niece.

Even though it is uncontroverted that Plaintiff is a descendent of one of Saul's siblings, and clearly falls within a category of permissible gift recipients described in Paragraph 20, this Court finds that Paragraph 20 is not specific or express enough within the meaning of N.J.S.A. 46:2B-8.13a to confer power to Plaintiff to make gifts to herself.

There are several reasons why we think this is so. First, if Saul had intended to give his niece power to give herself gifts he chose an odd, inartful, and indirect way to do it. It would have been much simpler, more direct, and clearer for her uncle and the drafter to grant that power to her explicitly, by name and by title as attorney-in-fact, rather than have that power derived by her status as a member of a broad category that included at least one other person and maybe more. This lack of clarity in what is otherwise a comprehensive legal document suggests that Plaintiff's interpretation of the Paragraph 20 was

---

[8] In light of our disposition of this matter, we need not address Defendant's alternative argument that by statute a durable power of attorney must expressly grant an attorney-in-fact the power to designate a beneficiary of a life insurance policy. The parties appear to agree that no such provision exists in the power of attorney document at issue in this case and Plaintiff relies solely on the Gifts provision for her argument that she had express authority to designate herself as beneficiary.

not her uncle's intent.

Second, Plaintiff's interpretation of Paragraph 20 would undermine the New Jersey Legislature's goal of preventing the very ambiguity and potential for self-dealing this case presents.[9] An attorney-in-fact owes a fiduciary duty to administer assets solely for the principal's benefit. Manna, 130 A.2d at 57 ("[W]hen a person undertakes to act as an agent, he assures the obligations of a fiduciary.")); N.J.S.A. 46:2B-19 ("An agent presenting or acting pursuant to or relying on a power of attorney described in section 2 of this act shall be a fiduciary within the meaning of the "Uniform Fiduciaries Law," P.L.1981, c. 405 (C.3B:14-52 et seq.).").

The purpose of N.J.S.A. 46:2B-8.13a is to preclude an attorney-in-fact from using her position of power to violate her fiduciary duty to the principal by transferring the principal's property to herself.[10] Only if the principal explicitly provides

---

[9] To be clear, we make no finding that Plaintiff acted with larcenous intent or other ill motive when she attempted to name herself as the sole beneficiary of the policy at issue here. We accept for purposes of this Opinion that she believed, albeit without supporting documentation, Saul had, before granting her power of attorney, named Plaintiff and her sister as beneficiaries. Viewed in that light, we accept her claim that she was merely attempting to manage Saul's financial affairs after her sister predeceased her uncle. In the end, it is not Plaintiff's intent that concerns us as much as how her interpretation of N.J.S.A. 46:2B-8.13a would enable those whose intent is less than benign.

[10] The N.J. Legislative history relates:

in the power of attorney document that the attorney-in-fact may transfer property or make gifts – to others, to herself, or both – can such gratuitous transfers be countenanced. Saul's durable power of attorney does not contain the explicit power to his attorney-in-fact the statute requires.

Interpretation of a statute faithful to its language and legislative intent is always important but we consider this judicial obligation even more pronounced under the facts of this case. Here, Plaintiff operated under a "durable" power of attorney which extended her broad power of attorney, and with it the power to gift, into and throughout the term of her principal's incompetency; that is to say, long after Saul himself lacked the ability to detect and prevent any unauthorized self-dealing or acts inconsistent with his other directives and bequeaths.[11]

---

> This bill is intended to protect the individual, known as the principal, who authorizes another person to act on his behalf in financial transactions by means of a power of attorney. The bill is intended to prevent fraudulent transfers of the principal's assets by clarifying that a power of attorney does not automatically give authority to the attorney-in-fact to make gratuitous transfers of property belonging to the principal. Under the bill, the attorney-in-fact would not be authorized to make gratuitous transfers or gifts unless the power of attorney expressly and specifically so authorizes.

New Jersey Senate Committee Statement, S.B. 2082, 5/8/2003.

[11] Saul's durable power of attorney contains a broad health care

Driven by the complexity, sophistication, privacy concerns, risk, cost, and the overall nature of medical and custodial care, durable powers of attorney are more and more common. We recognize, of course, that Saul could have decided while competent to give his niece full power to gift to herself all of his property before he died despite what any unrevoked will or trust document might direct, his care might require, or how any disenfranchised party might react. We simply hold that the New Jersey Legislature has determined by statute that if a grantor of a power of attorney intends such a result, they must do so clearly, expressly, and without ambiguity. Cf., Manna, 130 A.2d at 58-59 (noting gift by attorney-in-fact directly conflicted with reaffirmed bequeath of same property).

Lastly, the few cases that discuss N.J.S.A. 46:2B-8.13a are in accord with our reading of the statute or do not change our interpretation. See, e.g., Estate of Pauli v. Wachovia Bank, N.A., 2014 WL 8765427, at *8 (N.J. Super. Ct. App. Div. 2015)(in case where power of attorney document did not grant power to make gifts or change beneficiary designations, holding daughter

---

directive that provides Plaintiff with the authority to "make any arrangements for my medical care or hospitalization," and its intent, by making it "durable" and entered into six month before his death, is to authorize Plaintiff to have the full power to do "everything necessary" "as fully as [Saul] might or could do if personally present." (Docket No. 7-5 at 57, 59, 61.) Saul's conveyance of power to Plaintiff is overarchingly broad so that she may act in his stead while he is ill and dying.

15

of decedent would have exceeded her authority if she had diverted to herself and her sisters IRA CD proceeds which had been designated to the father's second wife); Wolpin, 2010 WL 1028164, at *6 (applying New Jersey common law to invalidate attorney-in-fact's transfer of real property to herself under power of attorney that did not clearly allow such self-dealing and noting that post-conduct passage of N.J.S.A. 46:2B-8.13a was consistent with ruling); cf., In Re Estate of Moskowitz, 115 A.3d 372, 388 n. 17 (noting similarity between New Jersey law and Pennsylvania law in requiring specific authority for attorney-in-fact to make gifts).[12]

---

[12] The only case we are aware of that could be interpreted to suggest otherwise is a pre-statute United States Tax Court case, Bronston v. C.I.R., T.C. Memo. 1988-510 (U.S. Tax Court 1988). In Bronston, the Tax Court applied New Jersey common law to allow an attorney-in-fact to make six pre-death (hence lowering the amount of the taxable estate) transfers of cash to family members including the attorney-in-fact under a broad power of attorney that expressly allowed the transfer of any property of the decedent. In doing so, the Tax Court distinguished Von Wedel v. McGrath, 180 F.2d 716 (3d Cir. 1950), cert. denied, 340 U.S. 816 (1950) and Manna v. Pirozzi, 130 A.2d 55 (N.J. Super. Ct. App. Div. 1957):

> The power of attorney in the present case differs materially from that in Von Wedel and Manna. The decedent's power of attorney . . . . specifically authorizes Bronston, 'to grant and * * * convey * * * any property now or in the future owned by me.' The power of attorney in Von Wedel and Manna did not include such language. The SPECIFIC language in decedent's power of attorney could authorize gifts in appropriate circumstances. While this language also appears with language granting powers to sell, bargain, lease and contract, in Von Wedel and Manna the language clearly

16

**CONCLUSION**

In sum, we hold that MetLife properly interpreted New Jersey law in determining that Saul's durable power of attorney failed to meet a statutory obligation to expressly and specifically grant his attorney-in-fact the power to transfer or gift property to herself regardless of the type of property involved. Consequently, MetLife did not act arbitrarily or capriciously in its denial of Plaintiff's claim.

Accordingly, Plaintiff's motion for summary judgment in her favor on her claim for benefits as a beneficiary of an ERISA plan administrated by MetLife must be denied, and MetLife's motion for summary judgment must be granted.

An appropriate Order will be entered.


Date: September 6, 2017       s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

---

    limited the exercise of powers to business transactions. In this case there is not such a specific limitation and the circumstances surrounding the decedent's giving the power are quite unlike those present in either Von Wedel and Manna. . . .

We find Bronston inapposite. First, it makes no mention of, and therefore does not address, the fact that one of the recipients of the transfers was the attorney-in-fact. Second, as we have noted, it predates the passage of N.J.S.A. 46:2B-8.13a. We have no difficulty in concluding that the outcome in Bronston would have been different for those funds the attorney-in-fact transferred to himself if that statute was in force at the time of the transfer.

17